IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

MAR — 6 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:14cr82 |
| | ) | |
| v. | ) | Count 1: 18 U.S.C. § 1956(h) |
| | ) | (Conspiracy to Launder Monetary |
| JOSHUA VANDYK, | ) | Instruments) |
| ERIC ST-CYR, | ) | |
| PATRICK POULIN, | ) | Counts 2-3: 18 U.S.C. §§ 1956(a)(3)(B) |
| | ) | & 2 |
| Defendants. | ) | (Laundering Monetary Instruments) |
| | ) | |
| | ) | **UNDER SEAL** |

## INDICTMENT

March 2014 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

Unless otherwise stated, at all times relevant to this Indictment:

1.      Defendant JOSHUA VANDYK was a citizen of the United States who worked
and resided in the Cayman Islands.  From in or about October 2012 through the present,
VANDYK worked for Company C, an investment firm based in the Cayman Islands.  Both
during his employment with Company C, and during prior employment with another investment
firm based in the Cayman Island, VANDYK's clientele included numerous U.S. citizens.

2.      Defendant ERIC ST-CYR was a citizen of Canada who worked and resided in the
Cayman Islands.  ST-CYR was the founder and head of Company C.  Company C's clientele
included numerous U.S. citizens.

3.      Defendant PATRICK POULIN was a citizen of Canada who worked and resided in Canada and in the Turks and Caicos Islands (hereinafter "Turks and Caicos").  POULIN was an attorney at a law firm based in Turks and Caicos.  POULIN's clientele included numerous U.S. citizens.

4.      The allegations in paragraphs 1 through 3 are re-alleged in each count of this Indictment as if set forth fully therein.

2

## COUNT 1
### (Conspiracy to Launder Monetary Instruments)

5.     From on or about March 7, 2013, through the present, in the Eastern District of

Virginia and elsewhere, the defendants,

JOSHUA VANDYK,
ERIC ST-CYR, and
PATRICK POULIN

did knowingly combine, conspire, and agree with each other and with other persons known and

unknown to the Grand Jury to launder monetary instruments in violation of Title 18, United

States Code, Section 1956, to wit: with the intent to conceal and disguise the nature, location,

source, ownership, and control, of property believed to be the proceeds of specified unlawful

activity, to knowingly conduct a financial transaction affecting interstate and foreign commerce

involving property represented by a law enforcement officer, who is known to the Grand Jury, to

be proceeds of specified unlawful activity, that is, bank fraud, in violation of Title 18, United

States Code, Section 1956(a)(3)(B).

6.     It was the object of the conspiracy for defendants VANDYK, ST-CYR, and

POULIN to create layers of transactions in foreign commerce through which their U.S. clients

could launder criminal proceeds.

7.     It was also the object of the conspiracy for defendants VANDYK, ST-CYR, and

POULIN to use the layers of transactions in foreign commerce to falsely disclaim knowledge of

the fact that their clients were U.S. citizens who were using their services to launder criminal

proceeds.

3

## Manner and Means

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

8.     Defendants VANDYK and ST-CYR would and did solicit U.S. citizens to use their services to hide assets from the U.S. government.

9.     Defendants VANDYK and ST-CYR would and did advise U.S. citizens to create offshore foundations with the assistance of defendant POULIN and others.

10.     Defendant POULIN would and did establish offshore foundations on behalf of U.S. citizens, and would and did serve as a nominal board member of such foundations in lieu of the U.S. citizens.  U.S. citizens would and did cause moneys to be wired from the United States to fund the foundations.

11.     Defendant POULIN would and did transfer wire payments from offshore foundations to the Cayman Islands, whereupon defendants VANDYK and ST-CYR would and did cause such moneys to be invested outside of the United States.

12.     Company C did not disclose the investments, or any investment gains, on behalf of their U.S. citizen clients to the U.S. government.  Company C also did not provide monthly statements or other investment statements to their clients.  However, clients of Company C were able to monitor their investments on-line through the use of anonymous, numeric passcodes.

13.     Upon request from U.S. citizen clients, defendants VANDYK and ST-CYR would and did cause Company C to liquidate investments and transfer moneys, through defendant POULIN, back to the United States.

4

Overt Acts

In furtherance of the conspiracy and to achieve the objects and purposes thereof, the defendants and their co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Virginia and elsewhere:

14.    On or about March 7, 2013, defendants VANDYK and ST-CYR met with three undercover agents (hereinafter "UCA-1," "UCA-2," and "UCA-3") in Miami, Florida.  UCA-1 had a pre-existing relationship with VANDYK in which UCA-1 had assumed the identity of a wealthy U.S. citizen who was interested in offshore investing without reporting investment income to U.S. authorities.  UCA-2 assumed the identity of a financial planner who represented numerous U.S. citizens, including UCA-1 and UCA-3.  UCA-3 assumed the identity of a U.S. citizen who was looking for ways to launder criminal proceeds and avoid taxes.

15.    During the meeting on or about March 7, 2013, defendants VANDYK and ST-CYR explained that Company C does not take on U.S. clients directly, but that Company C took on U.S. clients by having those clients create corporations, trusts, and foundations in foreign jurisdictions, by moving money through such entities and eventually into the Cayman Islands, and by using foreign attorneys as intermediaries for such transactions.  VANDYK and ST-CYR also indicated that clients of Company C like the fact that nothing Company C does touches the United States.

16.    During the meeting on or about March 7, 2013, UCA-3 told defendants VANDYK and ST-CYR that UCA-3 had defrauded a bank in the United States and was looking to move the proceeds of that fraud offshore.

17.    On or about July 16, 2013, defendant VANDYK met with UCA-2 and UCA-3 in San Francisco, California. During this meeting, UCA-3 reiterated that he was looking to move the proceeds of his bank fraud scheme in his dealings with VANDYK and ST-CYR. VANDYK indicated that this was acceptable to the co-conspirators so long as the money was not linked to drugs or terrorism. VANDYK recommended that UCA-2 and UCA-3 use POULIN as an intermediary in getting UCA-3's money out of the United States.

18.    On or about September 11, 2013, UCA-2 and UCA-3 met defendant POULIN in Quebec, Canada. During this meeting, POULIN indicated that most of his clients were U.S. and Canadian citizens. POULIN explained that he could set up an offshore foundation for UCA-3's money, and that UCA-2 and UCA-3 would not be identified as members or advisors of the foundation.

19.    During the meeting on or about September 11, 2013, UCA-3 explained to defendant POULIN that UCA-3 had obtained approximately $2 million by defrauding a financial institution in the United States. UCA-3 indicated that the proceeds of the fraud were held in several limited liability corporations in the United States. UCA-3 indicated that he wished to move the money offshore so that it would not be linked to the bank fraud, and that he wanted to begin by moving $200,000 of the bank fraud proceeds to Company C through POULIN.

20.    On or about December 11, 2013, UCA-2 and UCA-3 met with one of defendant POULIN's law partners in the Turks and Caicos, with POULIN participating by teleconference. During this meeting, at the instruction of POULIN and his law partner, UCA-2 and UCA-3 executed paperwork allowing POULIN to establish an offshore foundation called "Zero Exposure Inc."

21.     On or about December 17, 2013, UCA-2 caused $200,000, represented to be part of the proceeds of UCA-3's bank fraud, to be wired from a Bank of America, N.A. ("Bank of America") account established in Arlington, Virginia, within the Eastern District of Virginia, account number ending in 6189, to an escrow account of defendant POULIN's law firm in Turks and Caicos.

22.     On or about December 18, 2013, defendant POULIN confirmed receipt of the $200,000. On or about the same date, "Zero Exposure Inc." foundation was established in Turks and Caicos.

23.     On or about December 18, 2013, defendant POULIN caused $200,000 to be wired from Turks and Caicos to the Cayman Islands.

24.     On or about December 31, 2013, defendants VANDYK and ST-CYR confirmed receipt of the $200,000 and began to invest and manage the money on behalf of UCA-2 and UCA-3.

25.     On or about January 12, 2014, defendant POULIN caused a package to be sent via international mail from Quebec, Canada, to an address in Arlington, Virginia, within the Eastern District of Virginia. The package contained a form that identified UCA-2 as a beneficial owner of "Zero Exposure Inc.," and authorized transfer of the entirety of the $2 million that UCA-3 had represented to be the proceeds of UCA-3's bank fraud scheme to Turks and Caicos and thereafter to an account with Company C in the Cayman Islands.

26.     On or about January 16, 2014, UCA-2 and UCA-3 met defendants VANDYK and ST-CYR in the Cayman Islands. During this meeting, VANDYK and ST-CYR indicated that use of a foundation as intermediary was the preferable process for money laundering, while use

of a trust intermediary was sufficient for tax evasion.  VANDYK and ST-CYR also indicated that they would charge clients more to launder criminal proceeds than to assist in tax evasion.

27.     At the meeting on or about January 16, 2014, defendants VANDYK and ST-CYR agreed to return the $200,000 in bank fraud proceeds that was transferred through defendant POULIN to the Cayman Islands so that UCA-2 and UCA-3 could see how the money would come back into the United States before engaging in further business with VANDYK, ST-CYR, and POULIN.

28.     On or about January 16, 2014, defendant ST-CYR, UCA-2, and UCA-3 called defendant POULIN, who agreed to serve as an intermediary in returning the $200,000 in bank fraud proceeds to the United States.

29.     On or about February 3, 2014, defendants VANDYK and ST-CYR caused UCA-3's investments to be liquidated and caused $197,115.68 to be wired from the Cayman Islands to Turks and Caicos.

30.     On or about February 14, 2014, defendant POULIN caused $197,115.68 to be wired from Turks and Caicos to a Branch Banking and Trust Company ("BB&T") account for an entity based in Chesterfield, Virginia, within the Eastern District of Virginia, account number ending in 9343.

(In violation of 18 U.S.C. § 1956(h)).

## COUNTS 2-3
### (Laundering Monetary Instruments)

31.     The allegations in Count 1, Paragraphs 6 through 30 of this Indictment are re-alleged and incorporated herein.

32.     On or about the dates listed below, in the Eastern District of Virginia and elsewhere, defendants,

JOSHUA VANDYK,
ERIC ST-CYR, and
PATRICK POULIN,

with the intent to conceal and disguise the nature, location, source, ownership, and control, of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property represented by a law enforcement officer, who is known to the Grand Jury, to be proceeds of specified unlawful activity, that is, bank fraud.

| Count | Date | Amount Transferred | Origin | Destination |
|-------|------|--------------------|--------|-------------|
| 2 | 12/17/2013 | $200,000.00 | Bank of America account -6189, Arlington, Virginia | Turks and Caicos |
| 3 | 2/14/2014 | $197,115.68 | Turks and Caicos | BB&T account -9343, Chesterfield, Virginia |

(In violation of 18 U.S.C. §§ 1956(a)(3)(B) & 2).

9

A TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
FOREPERSON

DANA J. BOENTE
Acting United States Attorney

Kosta S. Stojilkovic
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700

KATHRYN KENEALLY
Assistant Attorney General
Department of Justice Tax Division

Caryn Finley    by KSS
Caryn Finley
Todd A. Ellinwood
Trial Attorneys
Department of Justice Tax Division
601 D Street, NW
Washington, DC 20004
202-514-5145

10