IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 1:14cr82-1-TSE |
| | ) | |
| JOSHUA VANDYK, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in the Criminal Information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt:

1.   Defendant JOSHUA VANDYK was a citizen of the United States who worked and resided in the Cayman Islands. From in or about October 2012 through the present, VANDYK worked for Company C, an investment firm based in the Cayman Islands. Both during his employment with Company C, and during prior employment with another investment firm based in the Cayman Islands, VANDYK's clientele included numerous U.S. citizens.

2.   Eric St-Cyr was a citizen of Canada who worked and resided in the Cayman Islands. St-Cyr was the founder and head of Company C. Company C's clientele included numerous U.S. citizens.

3.   Patrick Poulin was a citizen of Canada who worked and resided in Canada and in the Turks and Caicos Islands (hereinafter "Turks and Caicos"). Poulin was an attorney at a law firm based in Turks and Caicos. Poulin's clientele included numerous U.S. citizens.

## The Conspiracy

4. From on or about March 7, 2013, through March 12, 2014, in the Eastern District of Virginia and elsewhere, the defendant, JOSHUA VANDYK and his co-conspirators Eric St-Cyr and Patrick Poulin, did knowingly combine, conspire, and agree with each other to commit the following offense against the United States: with the intent to conceal and disguise the nature, location, source, ownership, and control, of property believed to be the proceeds of specified unlawful activity, to knowingly conduct a financial transaction affecting interstate and foreign commerce involving property represented by a law enforcement officer, who is known to the U.S. Attorney, to be proceeds of specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

## Manner and Means of the Charged Conspiracy

5. VANDYK, St-Cyr, and Poulin created layers of transactions in foreign commerce through which their U.S. clients could launder criminal proceeds.

6. VANDYK, St-Cyr, and Poulin used the layers of transactions in foreign commerce to falsely disclaim knowledge of the fact that their clients were U.S. citizens who were using their services to launder criminal proceeds.

7. VANDYK and St-Cyr solicited U.S. citizens to use their services to hide assets from the U.S. government, including the Internal Revenue Service ("IRS").

8. VANDYK and St-Cyr advised U.S. citizens to create offshore foundations and corporations with the assistance of Poulin and others.

9. Poulin established offshore corporations on behalf of U.S. citizens, and would and did serve as a nominal board member of such corporations in lieu of the U.S. citizens. U.S. citizens would and did cause moneys to be wired from the United States to fund the corporations.

10. Poulin transferred wire payments from offshore corporations to the Cayman Islands, whereupon VANDYK and St-Cyr caused such moneys to be invested outside of the United States.

11. Company C did not disclose the investments, or any investment gains, on behalf of their U.S. citizen clients to the U.S. government or the IRS. Company C also did not provide monthly statements or other investment statements to their clients. However, clients of Company C were able to monitor their investments on-line through the use of anonymous, numeric passcodes.

12. Upon request from U.S. citizen clients, VANDYK and St-Cyr caused Company C to liquidate investments and transfer moneys, through individuals such as Poulin, back to the United States.

## Overt Acts

In furtherance of the conspiracy and to achieve the objects and purposes thereof, the defendant and his co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Virginia and elsewhere:

13. On or about March 7, 2013, VANDYK and St-Cyr met with three undercover agents (hereinafter "UCA-1," "UCA-2," and "UCA-3") in Miami, Florida. UCA-1 had a pre-existing relationship with VANDYK in which UCA-1 had assumed the identity of a wealthy U.S. citizen who was interested in offshore investing without reporting investment income to

U.S. authorities. UCA-2 assumed the identity of a financial planner who represented numerous U.S. citizens, including UCA-1 and UCA-3. UCA-3 assumed the identity of a U.S. citizen who was looking for ways to launder criminal proceeds and avoid taxes.

14. During the meeting on or about March 7, 2013, VANDYK and St-Cyr explained that Company C does not take on U.S. clients directly, but that Company C took on U.S. clients by having those clients create corporations, trusts, and foundations in foreign jurisdictions, by moving money through such entities and eventually into the Cayman Islands, and by using foreign attorneys as intermediaries for such transactions. VANDYK and St-Cyr also indicated that clients of Company C like the fact that nothing Company C does touches the United States.

15. During the meeting on or about March 7, 2013, UCA-3 told VANDYK and St-Cyr that UCA-3 had defrauded a bank in the United States and was looking to move the proceeds of that fraud offshore.

16. On or about July 16, 2013, VANDYK met with UCA-2 and UCA-3 in San Francisco, California. During this meeting, UCA-3 reiterated that he was looking to move the proceeds of his bank fraud scheme in his dealings with VANDYK and St-Cyr. VANDYK indicated that this was acceptable to the co-conspirators so long as the money was not linked to drugs or terrorism. VANDYK recommended that UCA-2 and UCA-3 use Poulin as an intermediary in getting UCA-3's money out of the United States.

17. On or about September 11, 2013, UCA-2 and UCA-3 met Poulin in Quebec, Canada. During this meeting, Poulin indicated that most of his clients were U.S. and Canadian citizens. Poulin explained that he could set up an offshore corporation for UCA-3's money, and that UCA-2 and UCA-3 would not be identified as members or advisors of the corporation.

18. During the meeting on or about September 11, 2013, UCA-3 explained to Poulin that UCA-3 had obtained approximately $2 million by defrauding a financial institution in the United States. UCA-3 indicated that the proceeds of the fraud were held in several limited liability corporations in the United States. UCA-3 indicated that he wished to move the money offshore so that it would not be linked to the bank fraud, and that he wanted to begin by moving $200,000 of the bank fraud proceeds to Company C through Poulin.

19. On or about December 11, 2013, UCA-2 and UCA-3 met with one of Poulin's law partners in the Turks and Caicos, with Poulin participating by teleconference. During this meeting, at the instruction of Poulin and his law partner, UCA-2 and UCA-3 executed paperwork allowing Poulin to establish an offshore corporation called "Zero Exposure Inc."

20. On or about December 17, 2013, UCA-2 caused $200,000, represented to be part of the proceeds of UCA-3's bank fraud, to be wired from a Bank of America, N.A. ("Bank of America") account established in Arlington, Virginia, within the Eastern District of Virginia, account number ending in 6189, to an escrow account of Poulin's law firm in Turks and Caicos.

21. On or about December 18, 2013, Poulin confirmed receipt of the wired funds. On or about the same date, "Zero Exposure Inc." corporation was established in Turks and Caicos.

22. On or about December 18, 2013, Poulin caused approximately $200,000 to be wired from Turks and Caicos to the Cayman Islands.

23. On or about December 31, 2013, VANDYK and St-Cyr confirmed receipt of the wired funds and began to invest and manage the money on behalf of UCA-2 and UCA-3.

24. On or about January 12, 2014, Poulin caused a package to be sent via international mail from Quebec, Canada, to an address in Arlington, Virginia, within the Eastern

District of Virginia. The package contained a form that identified UCA-2 as a beneficial owner of "Zero Exposure Inc.," and authorized transfer of the entirety of the $2 million that UCA-3 had represented to be the proceeds of UCA-3's bank fraud scheme to Turks and Caicos and thereafter to an account with Company C in the Cayman Islands.

25. On or about January 16, 2014, UCA-2 and UCA-3 met VANDYK and St-Cyr in the Cayman Islands. During this meeting, VANDYK and St-Cyr indicated that use of a foundation or corporation as intermediary was the preferable process for money laundering, while use of a trust intermediary was sufficient for tax evasion. VANDYK and St-Cyr also indicated that they would charge clients more to launder criminal proceeds than to assist in tax evasion.

26. At the meeting on or about January 16, 2014, VANDYK and St-Cyr agreed to return the bank fraud proceeds that were transferred through Poulin to the Cayman Islands so that UCA-2 and UCA-3 could see how the money would come back into the United States before engaging in further business with VANDYK, St-Cyr, and Poulin.

27. On or about January 16, 2014, St-Cyr, UCA-2, and UCA-3 called Poulin, who agreed to serve as an intermediary in returning the bank fraud proceeds to the United States.

28. On or about February 3, 2014, VANDYK and St-Cyr caused UCA-3's investments to be liquidated and caused approximately $197,115.68 to be wired from the Cayman Islands to Turks and Caicos.

29. On or about February 14, 2014, Poulin caused $197,115.68 to be wired from Turks and Caicos to a Branch Banking and Trust Company ("BB&T") account for an entity

based in Chesterfield, Virginia, within the Eastern District of Virginia, account number ending in 9343.

30. VANDYK did not complete, nor was he about to complete, all the acts believed to be necessary to launder the entire $2,000,000 in purported criminal proceeds prior to his arrest in this case, nor did VANDYK anticipate that his co-conspirators had completed all such acts.

31. VANDYK engaged in the conduct described above willfully and knowingly and not because of accident, mistake, or other innocent reason.

32. The statement of facts includes those facts necessary to support a plea agreement between the defendant and the United States. It does not include every fact known to the defendant or to the United States and it is not intended to be a full enumeration of all the facts surrounding the defendant's case.

Respectfully submitted,

DANA J. BOENTE
United States Attorney

Kosta S. Stojilkovic
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700

TAMARA W. ASHFORD
Acting Assistant Attorney General
Department of Justice, Tax Division

Caryn Finley
Todd A. Ellinwood
Trial Attorneys

Department of Justice, Tax Division
601 D Street, NW
Washington, DC 20004
202-514-5145

Defendant's Stipulation and Signature

After consulting with my attorney and pursuant to the plea agreement I entered into this day with the United States, I hereby stipulate that the above statement is true and accurate. I further stipulate that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 6-12-14

Joshua Vandyk
Defendant

Defense Counsel's Signature

I am Joshua Vandyk's attorney. I have carefully reviewed the above statement of facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 6/12/14

Andrew Levi, Esq.
Counsel for Defendant